S.C.RECEIVED

2005 DEC -7  9:30

HERIA R. HARIE, CLK

[SUPPLIED BY SUPREME COURT CLERK]

## IN THE SUPREME COURT OF ALABAMA

EX PARTE:   DANNY LEE STEWART,

PETITIONER/APPELLANT,

IN RE:   DANNY LEE STEWART,

VS.

STATE OF ALABAMA,

RESPONDENT/APPELLEE.

---

ON POST-CONVICTION APPEAL FROM THE
ALABAMA COURT OF CRIMINAL APPEALS IN CASE NO.: CR-04-0185
CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA (CIRCUIT COURT NO. CC-90-927.61

---

BRIEF AND ARGUMENT OF APPELLANT

AND THE

REQUEST FOR ADDITIONAL STATEMENT OF FACTS

WITH BRIEF IN SUPPORT OF

PETITION FOR WRIT OF CERTIORARI

---

PRO SE

DANNY LEE STEWART, AIS#143130
LIMESTONE CORRECTIONAL FACILITY
DORM 11B-65T
28779 NICK DAVIS ROAD
HARVEST, ALABAMA 35749-7009

JULY 13, 2005

# I.

## STATEMENT REGARDING ORAL ARGUMENT

The Petitioner/Appellant does not request oral argument in this proceeding.

II.

STATEMENT REQUEST FOR ADDITIONAL STATEMENT OF FACTS

Whether the State erred on the Petitioner abandoned the issues of the knife as self-defense.

III.

## TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT................................I.

STATEMENT REQUEST FOR ADDITIONAL STATEMENT OF FACTS.............II.

TABLE OF CONTENTS.............................................III.

TABLE OF AUTHORITIES..........................................IV.

ISSUES PRESENTED FOR REVIEW....................................V.

STATEMENT OF FACTS.............................................1.

ISSUE PRESENTED FOR REVIEW.....................................1.

ARGUMENT......................................................3.

CONCLUSION...................................................26.

AFFIRMATION OF OATH..........................................28.

CERTIFICATION REGARDING FRONT AND TYPE STYLE.................29.

CERTIFICATE OF SERVICE.......................................30.

IV.

<u>TABLE OF CASES AND AUTHORITIES</u>                              <u>PAGE</u>

<u>Ex parte Rice</u>, 656 So.2d 606 (Ala. 1990).................................3

<u>Smith v. State</u>, 581 So.2d 1283 (Ala.Crim.App. 1991).....................3

<u>Owen v. State</u>, 659 So.2d 977 (Ala.Crim.App. 1994).......................4

<u>Alderman v. State</u>, 647 So.2d 28, 31 (Ala.Crim.App. 1994)................4

<u>Ex parte Rice</u>, 565 So.2d 601 (Ala. 1990).................................5

<u>Whit v. State</u>, 827 So.2d 869 (Ala.Crim.App. 2001).......................5

<u>Blount v. State</u>, 572 So.2d 498, 500-01 (Ala.Crim.App. 1990)............6

<u>Kennedy v. State</u>, 472 So.2d 1106 (Ala. 1985)...........................11

<u>Brady v. Maryland</u>, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963)..........12,25

<u>U.S. v. Agurs</u>, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976)............12

<u>Mooney v. Goldsmith</u>, 979 F.2d 746, 749-50 (9th Cir. 1992).................12

<u>Dickerson v. State</u>, 517 So.2d 628 (Ala. 1987)..........................25

<u>RULES OF APPELLANT PROCEDURE</u>:

Rule 32.7(d), <u>Alabama Rules of Criminal Procedure</u>....................1,3

Rule 32.2(b), <u>Alabama Rules of Criminal Procedure</u>....................6

Rule 5.1....................................................................7,26

Rule 5.1(a), <u>Alabama Rules of Criminal Procedure</u>....................7

Rule 45, <u>Alabama Rules of Appellate Procedure</u>.......................11

Section § 15-19-1, <u>Code of Alabama (1975)</u>...........................11

Rules of Evidence.........................................................14

Fourteenth Amendment, <u>Constitution of the United States</u>............27

V.

## ISSUES PRESENTED FOR REVIEW

1. INEFFECTIVE ASSISTANCE OF COUNSEL

2. DISMISSAL OF RULE 32 PETITION

3. BRADY VIOLATION

4. EXPLORATORY EVIDENCE

5. SELF DEFENSE

(1)

## STATEMENT OF FACTS

  Appellant stewart appeals the decision of the trial court
in the dismissing his RULE 32 petition being granted by the trial
court (1/7/2005). Stewart then filed a motion for rehearing.The
appellant is due to a right of WRITOFCETIORARI.The appellant never
abandoned the issue of the Knife.

  Appellant Stewart appeals the decision of the trial court
in dismissing his RULE 32 petition, (denied 1/7/2005).Appellant
Stewart(S) petition is successive petition, setting fort numerous
Allegations that if "true", would entitle him to the request.

  The instant petition was not procedurally barred in the
right that the appellant attached, to his petition on affidavit from
the paralegal demonstrati   that the issue's should have been raised
in an eaRLier petition, but never, and were not,and this issue is
based upon evidence of ineffective assistance of trial counsel, as
well as ineffective assistance of appellant counsel.

## ISSUE PRESENTED FOR REVIEW

(1) RULE 32.7(d) Alabama rules of criminal procedure, allows
the trial court to dismiss the petition if The court determines
that the petition is not (1)Sufficiently specific, (2) or is precluded
(3) or failed to state a claim, or (4) That no material issue of
fact or law exist which would entitile the petitioner to relief under
this rule, and (5) That no purpose would be served by any fort proceding.

(2) Ineffective assistance of trial councel:  The petitioner claims
of ineffective assistance of counsel is due to rise to the level
of a 6th Amendment Violatïon:(1) counsel was d ficient and performed
below an objective standard of resonableness,(2) counsel defective
performance resulted in prejudice for the petitioner.

(2)

(3) For the court to determine in the BRADY issue has never been aserted as a claim and (2) Determine i such a claim as BRADY is of such magnitude to render the verdict of guilty,void, and (3) Determine "if" original defence councel or appellat counsel had sufficient records and information to raise the BRADY issue on the first appeal aND(5) Determine "if" counsel representing appellant on RULE 32 evidentary hearing, could or should have raised the BRADY issue, either by amending petition, or on the appeal.

(4) EXPLORATORY EVIDENCE:   BRADY held in part as follows:

The suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material, either to the guilt or to the punishment, irrespective of the good faith of the prosecution.

In the instant case: The issue ` Whether the defendant was unduly prejudiced by the prosecutor (s) Failure to produce the potentually exculpatory the KNIFE after the defendant had moved for discovery.

(5) SELF DEFENCE:   Throughout the legal proceedings of this case petitioner has maintained his act of self defence:

(3)

ARGUEMENT

RULE 32.7(d) Alabama of criminal procedure, allows the
trial court to dismiss the petition "if" the court determines that
the petitioner is not, (1) sufficently specific (2) or is precluded
(3) or fails to state a claim, or (4) That no material issue of fact
or law exists which would intitle the petitioner to relief under
this rule, and (5) That no purpose would be served by any further
proceedings.

The Alabama Supreme court decided this particular issue in
EX PARTE RICE 656 so.2d 606(Al.1990) and the court of criminal appeals
followed in RICE V. STATE 567 so. 2d608 (AL.1990).Where it set forth
that;

".The burden is upon the state

of Alabama to assert and show

the specific ground of preclusion.

In the instant case, There is merely the denial as a subsequent
petition. The Appellant naver had an hearing to determine the merits
of the proposed issues. There is no notice of any grounds of preclusio
because of the state(s) failure to respond.

See SMITH V.STATE    581 so.2d 1283(Ala.crim.app.1991) where the
court of criminal appeals stated:

...Because of the state(s)

failure to respond the appellant

was never giving the requisite

(4)

notice the cause must be

remanded.


        The summary dismissal of the petitioner stating merely

that it is a subsequent petition and that it does not neccessarily

bar the petition from being heard on it(s) merit(s).

        Again, this court of appeals decided in the OWEN V.STATE

659 so 2d 977(ALa.crim.app.1994) That,

                ...It is a factual impossibility

                to bar relief because a claim

                was not raised on direct appeal

                and because it could have been,

                but was not..


This same court of appeals decided in ALDERMAN V. STATE  647 so 2d

28,31(al.crim.app.1994)

                ...first opportunity to raise

                claim was sucessive petition.


        The same circumstance arise here, where the petitioner

discovered his claim by reading the transcript of the RULE 32hearing,

the issue's presented'and present petition are a matter of the

record and therfore, should not be precluded because such information

was not availible to the petitioner prior to the filing of his sucessiv

petition.

(5)

The same as in EX PARTE RICE 565 so.2d 601 (Al.1990).
The question presented is whether the denial of the petition violates
the petitioner(s) rights to due process, and whether the State has
satisfied it(s) burden of proof as to whether the issue(s) presented
in this petition precluded it on or as a successive petition.

The court, in WHIT V. STATE  827 so.2d 869(Al. crim.app.2001)

...We constucted RULE 32.2(b)
to require that, as subsequent petition
can be deemed successive, a previos
petition must have been considered on its
merits. In other words,A second or successive
petition on the same or similar grounds cannot
be deemed proceduarlly barred, unless the
the same or similar grounds asserted in a
prior petition were adjudicated on there
merits. In addition, a second or success ve
petition were additional on different grounds
cannot be procedurally barred unless the prior
petition was adjudicated on it(s) merit(s) a
petitioner shows both that good cause exist
why the new grounds were not Known or could not have been asserted
through resonable dilgence..And that failure to entertaine the
petition will result in a miscarriage..

(6)

Of justice, RULE 20,2 (b). Thus, the first inquiry
in determining whether a subsequent petition on the same or on differen
grounds, is successive in whether a petition was decided on it(s)
merit(s), BLOUNT V. STATE   572 so.2(d) 498,500-01(Al.crim.app 1990)
Emphasis added:

The petition herein set forth that issue number#I
which could only be raised in a successive petition,Being newly discove
ed, and issues ,Because they were not known until after testimony
at the RULE 32 hearing (on 1/7/2005)on first petition..

ISSUE NUMBER II-

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

AND APPEAL COUNSEL

The defendant, not having had counsel who rendered
effective assistance at trial or on first appeal or first RULE 32
hearing,nor on Appeal of the adverse decision, having shown
the honorable court, several points in time which are directly re-
lated to the defendant(s) right to effective assistance of counsel.
Defendant was denied "due process"where the
state failed to Hold a preliminary hearing
proscribed by Alabama code and rule of court
rule (5.) Denying the defendant a fair trial/.

(7)

In the instant case, the defendant, requested for a pre_
liminary hearing, prescribed by law in the RULE OF ALABAMA court.


### RULE ____ RIGHT TO PRELIMINARY HEARING
### WAIVER :POSTPONMENT


(A) right to preliminary hearing,A defendant

charged by complaint with the commision of

a felony may, within thirty(30) days of arrest

demand a preliminary hearing. If demanded,the

preliminary hearing shall commence in distric

court within twenty-one(21)days following

the demand for preliminary hearing ,unless,

RULE 5(A) does not change the thirty (30) days rule

found in Alabama code 1975 15-11-1


Where the statute state(s) that a preliminary hearing

will be held upon request, in the District court.Defendant complains

that the record clearly states(Demonstrates that his request

was asked upon, But, Nor according to prescribed law. By Discription

whatever type of hearing was actually held was transcribed nor,

tape recorded for review, madeforreview nor, was the information

taking,made availble for the defence..

(8)

A violation of due process occur's where ther is
a denial of a right established in the law.The defendant
therefore claims that he was denied the right to cross examine
any witness at whatever the state claims to have been the defendants
preliminary hearing.

At the defendant(s) RULE 32. hearing, held in the
trial court on defendants first (1st) RULE 32. petition, there
was direct testimony, concerning the lack of a preliminary hearing.

Herein the Defendant sets forth the material facts
neccessary to establish a violation of due process. The defendant
would allso ask that this honorable court take judicial notice
of the record at this time to establish, and in establishing
that the defendant has, had ineffective assistance of counsel
through out the entire course of the criminal proceedings against
him.

REPORTER"S OFFICIAL TRANSCRIPT

FEBUARY 16th, 1994

PAGE 44(lines 3-12)

"On the witness stand is Mr. David Holmes,
Defendant(s) Appointed counsel at trial. THis witness
is being examined by counsel for  the defendant..

(9)

<u>LINES 3-13</u>

3   Q:  And you had a preliminary hearing on this: Right?

4       It was't like--

5   A:  The preliminary hearing--my recollection was

6       that there was not a formal preliminary hearing.My

7       Recollection was that was at a time one of the common

8       ways it was done in this circuit was the witnesses that

9       were present were put under oath, and that we were

10      allowed to take them outside the courtroom under oath,

11      and examine them. And i believe that's what i did in

12      this particular case  I believe i did it with Mr. Devane,

13      I believe i did it with Ms. Jerigan..

    At issue here is the defendants right to cross- examine
the witnesses. To have it occur in a court, on the witness stand
under oath.

    Further testimony, by this witness disclosed that
whatever type of procedding was held, it was not held in court
and there was no opportunity for a Distric court Judge to find
probable cause,Where the witnesses were examined outside the
court room, and there was no transcript of the witnesses testimony,
Therfor, no record to base probable cause upon.

(10)

As this court Knows, the denial of any procedural due process effectively voids any indictment in the instant case the denial  f the defendents right to cross-examine any of the states witnesses prior to the indictment or at a hearing required by law to be held in open court, denied the record information that could and should have been used at trial to impeach the state(s) witnesses, exsspecially concerning the Knife, and colaborating testimony about the presence of the weapon..

This would also enclude that there is no record of any testimony from the state(s) charging officers.  herefore there can be no facts or supporting facts to be reviewed by the grand jury in finding cause for an indictment.The Defendant(s) counsel failed to ask the court to postpone the proceeding until such time that counsel could file an amended complaint..

The Transcript of the RULE 32 hearing discloses that the state failed to disclose to the Defendant(s) counsel, Specific information concerning the Knife in Question..

This violation denies the defendaNT OF A FAIR TRIAL WHERE THE EVIDENCE WAS EXCLUDED FROM TESTIMONY SHARED WITH THE DEFENDANT(s) counsel.

(11)

Once this was known to the counsel and the defendants counsel, there should have been a postphonement of the proceding, until such time that the counsel could have filed, and amended, to the claim, or complaint.

The defendant was denied the effective assistance of counsel. Each proceding had in the instant case, has been evidence of in-evective assistance of counsel, and has been advers to the petitioner. There are specific times when counsel must be an adversary of the stat(s) to protect the right(s) of the defendant. Counsel in this case didnot protect the defendant, nor was he an Adversary to the state(s) claims.

The defendant respectfully ask this honerable court to look at RULE 45 Ala. r. app. p. i court must search the record for any error whether or not the error was brought to the ttention of the trial court. 15-19-1 (A) Ala. code 1975.

ISSUE NUMBER III AND IV
BRADY ISSUE AND EXCULPATORY EVIDENCE

In order to establish a BRADY violation the defendant must establish the folling elements, (1) That the prosecutor suppressed evidenc: (2) That the evidence was of a charecter favorable to the defendant in his defence: (3) That the evidence was material KENNEDY V. STATE 472 so. 2d 1106(Ala 1985)

(1) Did the prosecution give the knife back?
(2) Was the knife favorable to the defendant(s)
(3) Arguement of self defence.

ANSWER YES

With two(2) of the three(3), BRADY elements establishe this court must decide whether that the evidence was favorable to the defendant.

The state throughout the trial put so much emphasis on the issue of MURDER (must show intent) that the defendant argue(s) that the knife supports his arguement of self defence.

In the BRADY V. MARYLAND 373 u.s. 83 (1963) the United stae(s) Supreme court held that due process request the prosecution to disclose evidence favorable to an accused upon his request, when such evidence is material to the guilt,In BRADY, one of the defendant(s) accomplices after the defendant requested such a statement. The defendant was granted a new trial on the grounds and question of punishment because the un-disclosed confesstion was the punishement,(Id at 90-91).

Subsequentlly the Supreme Court cases have established that the state(s) duty under BRADY arises whether or not the defendant specifically request favorable evidence.(see U.S. V Agues 427 97, (107-11)(1976), a prosecuter(s) constitutional duty is to disclose favorable evidence governed by material standard and not limited to situations where a request is favorable evidence or not

Allso the Supreme Court has decided that the duty to disclose any material evidence is contineous, and does not merely end after United discovery. (see MOONEY V. GOLDSMITH 979 f2d 746, (749-50) 9th cir 1992)

The stat(s) obligation to disclose favorable evidence under BRADY covers  Exculpatory evidence.

At issue in the instant case (trial for MURDER), is physcial evidence. Specifically a KNIFE which was allegedly used by the victim to cut crack cocaine, and was used by the victim to threaten the defendant.

(14)

```
PAGE   LINE
14     22    ,                    Mr. Maxwell: now judge i object.
14     23                         thats not the testimony, she
14     24                         never said she put that knife in t
14     25                         that sink, she said that she
15     1                          saw the knife on the table, and
15     2                          the next morning she saw it in
15     3                          the sink(the court, sustained.)
15     22   Q: And you turned that over to the investigators?
15     23   A: YES.
```

### FURTHER REDIRECT EXAMINATION
### by MR. HUDGINS:
PAGE   (26)lines (7-12)

Q: Did the d,a ever tell you to turn the knife
back over to lisa Jernigan?

A:   yes.

Q: And was that before the trial?

A:  It had to be before the trial, because when it
came up at trial---

Testimony of Mitchell shaw
(Febuary 16, 2004)


This testimony is found in the reporters official
transcript RULE 32. The state(s) prosecuter interuppted further
testimony with his objection as reliance of police ineffectiv and
ineffectiveness.

Therefore Defendant sets, forth, that the stat(s)
prosecuting Attorney knowingly ingaged in an action(disposing
of exculpatory evidence) prior to trial. Knowing that the intro-
duction of the knife as an exibit allegedly present at the time of
the incident, and indictment(murder) would be criticul and crucial
to an conviction on the MURDER, and that acknoweleging it's
existance would take the defendants claim of self- defense. Placin
in jepordy the charge in the indictment of (MURDER)

(see burden of proof: Rules of evidence)

## <u>SELF-DEFENCE</u>

At issue in the instant case is physical evidence, specifically, a KNIFE which was allegedly used by the victim (1) to cut crack-cocaine, and (2) Was used by victim to threaten this defendant.

Throughout the trial testimony, several witness's gave testimony establishing specifically that the KNIFE, was present at the time in (Question) in the kitchen, and on the table (where the victim was sitting) who used the said knife to cut crack-cocaine.

LISA JERNIGAN (questioned by Mr. hudgins)
LINES (6-25) PAGE(13)

6   Q: Allright, when you testified, did you state
7   or didMr. Holmes ask you about what you did with the knife
8  Or do you recall?
9   A: I can't recall.
10  Q: What did you do with the knife?
11              <u>Mr. Maxwell</u>: judge, I'm going to have
12             to object. first of all ther's
13             been-- i would object on the
14             grounds that this could not
15          show ineffective assistance of
16             counsel.
17             <u>Mr. Hudgins</u> Judge, If there was
18             important facts that she knew
19             that counsel did not bring out
20             on direct examination--you
21             know, one thing may be a trial
22             tactic. But if there is--
23             <u>THE COURT</u> : Well, go ahead, i'll give y
               give you some leadway..

25  Q: Do you remember seeing the knife in the Kitchen?

(16)

Page (14-Lines 19-25)

page (15-lines 1-4)

Q: And did you tell them that you had seen the

knife? or that you had seen the knife-- or that you

had put that knife in that kitchen sink?

> Mr. maxwell: Now judge, i object
>
> thats not the testimony. she never
>
> said she put that knife in
>
> the sink. she said that she
>
> saw the knife on the table, and
>
> tje next morning she saw it in
>
> the sink..
>
> THE COURT:sustained.

PAGE (15-LINES 12-24)

Q: All right, you did have some investigators

come by sometime after and get the knife from you?

A: yes.

Q: was--tell the court about that

knife

A: Well, it was like a butter knife, and it had

little ridges at the end of it.

Q: O.k. but it was the only one in the house

like that

A: yes

Q: and you turned that over to the investigators

A: yes

Cross- examination by Mr. maxwell.

Page (16) Lines (5-15)


Q: Do you know whos investigators those were?

A: No. I don"t remember their names,

Q  Were they police officers?

A: NO.

Q: They were investigators for the defense, wer'nt they?

A I think so.

Q: O.k so it was him getti g out there and

through the defense establishing those things that Mr.

Hudgins is asking you about?

A: uh- huh

Page (16) Lines(22-25

Q: Did any pol    officers or any police

investigators ask you anything about a knif?

A: when?

Q: any time?

Page (17) lines( 1-5)

Mr. Maxwell: now judge, i'm going

to obje t. this is a case of

ineffective assistance of counsel,

Not ineffective investigation by police

department.

(18)

DIRECT EXAMINATION BY MR. HUDGINS

OF MITCHELL SHAW

page(18)lines (1-2)

Q: And who do you work with?

A: SHaw investigator agency.

Page(16)Lines(10-20)

Q: And did you retrieve a knife?

A: yes, sir.

Q: could you tell the court the circumstances on
retrieving that knife?

A: Myself and shane black and steve smith went
to--i'm trying to recall her name.

Q: Lisa jernigan.

A: Lisa Jernigan(s) residence, which i believe
was also the same place where this incident took place,
to review her, and upon doing so, i asked her if she
had the knife that--i asked if she had the knife that daddy faTS
WAS CUTTING UP THE ROCK COCAINE WITH. AND she said, yes she did
and I asked her if we could have it, and ahe went into the
house and came back out with the knife anf gave it to us.

Q: Did you later conduct a photo lineup or lineup a different knife

A: Not by photo, we had placed the knife on my desk with, i
believe, four, or five other knives.

Q: similar in size and shape?

A: Well a couple were, and a couple were larger

it was kind of a mixture of knifes. and then we

had Mr. stewart come into the office.

Q: And what happend when he came into the office?

A: Basically he was asked if he reconized anything

there on the desk. And he immediatly, without

hesitation picked up the knife that Lisa Jernigan

had giving us and said ( this is the knife that

daddy fats pulled on me)

Q: okay, Did you have any CONVESATION with Danny Stewart(s)

Attorney about what happened on that date?

A: as for as the knife and such?

Q: Yeah?

A: YES sir,

Q: OKay,so david holmes was his attorney, and he was aware

that Danny was able to pick that knife out of the line-up?

PAGE    (23) LINES(8)

Q: Do you know if the District attorney or the police ever

instructedd you to do any thing with that knife?

                              Mr. maxwell:  judge again i'm

                              going to object...

PAGE  26) LINES (7-20)

Q: DId the DA ever tell you to turn the knife back over to

Lisa Jernigan?

A: YES,

Q: ANd was that before the trial??

A: It had to be before3 the trial, because when it came up at trial..

Mr. Hudgins: call David Holmes

Direct Examination

David Holmes was appointed to represent Danny Stewart.


Page(27) Lines(22-25)

Q: Okay, and during your investigation, did you try to determine what happened to the knife?

A: YES, I did.

Q: All right, and did you ever find out exactly what happened to the knife?

Page(28) Lines(1-4)

A: yes, in fact we felt like we knew, and I'm going to have to narrate a little bit, but cut me off when you want.

Page 28 Lines (11-12)

A: There was a decussion regaurding the knife, and we felt Lisa Jernigan had the knife.

Page( 28) Lines(17-25)

the first thing that Danny had told me in relating the incident was that Mr. Mathis came at him with a knife. So the knife in my opinion became critical to his case of self-defense.

Q: Okay,did you--

A: SO yes, we felt like it was neccessary to get the knife, and we set about looking for it.

Q: And you did retrieve the knife?

A: yes , it was not an immediate situation. and i cannot recall the amount of time.It was certainly well before trial. This case wenta a very long time between-- in fact,if i was appointed some time

in the year 1990, i think this case went to trial in may of '92,
the first time around.

Q: From 1990 to May of '92?

A: Somewhere in that , lisa Jernigan was located. Lisa Jernigan
turned the knife over to Mr. Shaw(s) office

Q: But now during the trial, there was testimony that the knife
was onthe table?

A: YES.

Q: And theree was testimony that-- from Danny that Daddy fats picked
up the knife?

A: Thats correct.

Q: Did you investigate and ask all the officers about the knife,
what happened between the time it was either on the table or Daddy
Fats picked it up until it got into the sink?

A: Yeah, i did that , first of all if i recall correctly in this
case, Stan Devane was the primary investigating officer.

Q: So you asked him about the Knife?

A: At prelininary hearing and throughput the course of the trial,
I asked about the knife, and the response i was given was there
was'nt any knife. and i frankly. Mr. Stewart was very believable
to me in that situation.

Q: okay.

A: and so i was inclined to believe there was a knife, and that
either Mr. Hudspith had taken it or Ms. jernigan

Q: Now, The paramedics, did you ask them if theyhad found a knife
on the floor or if they had moved a knife?

(22)

Page (30) Lines(1-25 contiued)

A: No, i don't recall that i did.

Q: So, it is not conceivable that they could have been the ones to move the knife.

A: Sure, very easily could have.

Q: But you did'nt bother to investigate them or ask them when they arrived on the scene what they found?

A: We talked-- i did talk to the paramedics--at least once.one of the paramedics that i recall, i don't know that i talked to both of them. But i believe i talked to at least one of them at pre- liminary hearing about the presence or existance of the knife. And my recollection was that they did not say there was a knife, but they did'nt take it with them, and they did'nt know anything about it.

Q:But you only talked to one of them concerning the knife?

Page(31) LINES(1-25)

A: That's my recollection for some reason it's my recollection that only one of the paramedics showed up at the preliminary hearing. I may be mistaken about that, but that's my recollection.

Q: All right. There was some issue's in the trial as to whether or not that table had been moved, whether Daddy fats was sitting behind the table when he was shot. Did you question any of the paramedics on them moving the body in order to treat or moving the table or doing any of thaT.

A: I don't recall it.Danny(s) statement to me was that he actually-
when he walked in, he had been sitting behind the table,that he
picked up the knife and started lunging at him-- and we're talking
about a very small area. Imean, we are talking about a table within
a kitchen. It's not a separate dining room/kitchen areathat i recall.
and my recollection is that there was a diagram of that at the trial
That he somewhat lunged around---or down that table at danny with
that paticular knife; that, if i recall correctly there was questioning
both preliminary hearing and i believe-- and i have not read the
trial transcript, because i didn't handle the appeal-- but i believe
e en at trial that the body was foundd or that he had originally
slumped and there was indication that he was slumped down kind of
between the table and the wall which was consistant with what Danny
said, and was telling me.

Q: Now, there were some pictures taken of the scene?

A: Yes.

Q: All right , and just from your testimony now, you have indicated
that it seemed like the body WAS slumped between the wall and the
table?

A:I believe that(s) what--i believe that(s) what Danny said and indicated
to me, because he was sitting back in the corner, now i don't recall
where he was at the time of the photograph.

Q: But did you..

(24)

A: But, i mean it(s)understandable. and i believe at trial- and, of course, like i said, the transcript, which i presume you have read, would correct me if i am wrong-- but i believe there was some testimony elicited by Mr. Binford from the paramedic that he had moved the body. bu  , like i say the Transcript would bear that out one way or the other. That(s) just a recollection.

Q: But you did'nt make any attempt to reconstruct the scene or to how the body fell or explain that to the jury..

In the instant the attorney for the defense was ineffective for, (1) Failed to have transribed any recordings of preliminary hearing(2) Parts of preliminary hearing were held outside of the court in violation of the sixth(6) amendament,Right of confrontation, Vioolation of state law governing such conditions where and how preliminary hearing proceed due process violation, where defendant was denied cross examination process at preliminary hearing.

Whether our not counsel should have reconstructed the scene,as to how the body was or how it fell, or explain to the jury. Whether counsel was ineffictive for failure to talk to both the paramedicts.

Whether was ineffective for not investigating the paramedics for what they found at the crime scene.

Was the police ineffective in it(s) investigation of th crime scene. Did the police investigate all probable, of the crime scene.

Was the district court attorney ineffective withholing exculpatory evidence ( the knife). Why did the district attorney order the knife to be giving back to Lisa Jernigan before trial. was the knife critical to a self defense?

It is not in the interest of the justice to permit the prosecution in it's own descetion to determine the favorable or unfavorable motive of potentually exculpatory evidence, and then allow the prosecution to destroy(or otherwise dispose of the evidence. SEE. DICKERSON V. STATE  517 so 2d 628 (ala.1987)

In the instanty case istthe issue of whether the defendant was unduly prejudiced by the prosecutions failu.e to produce the potentually exculpatory,Knife after the defendant had moved for discovery.

Due to the decision in the BRADY V. MARYLAND  373 u.s.83 83 s.ct.1194, 101.ed.2d 215 (1965) The rule applicable to this type of situation is known as the     ` BRADY    RULE. The BRADY  decision indicates the standard to be applied in determining whether a new tri  is warrented because of the prosecution alleged suppression of exculpatory evidence.

Defendant alleges that the state(s) prosecutor, had in his    Possession material evidence... Throughout the trial the defendabt allegelly a claim of self- defense, the defendant maintained his self-defense arguement from day one..

CONCLUSION

Herein, defendant sets forth the material facts necessary to establish a violation of due process.
Defendant would also ask that this honorable Court take judicial notice of the record at this time, in establishing the violation.

Defendant was denied due process where the state failed to hold a preliminary hearing proscribed by Alabama code and RULES of court RULE   5. Denying the defendant a fair trial.

Where the statute state(s) that a preliminary hearing will be held upon request, in the District court.Defendant herein complains that the preliminary hearing was not held in open court, was  not transcribed, nor tape recorded for review, nor was the Information taking made available to the defense.
Clearly demonstrates that his request was acted upon, but , not according to prescribed law.

Defendant was denied the effective assistance of counsel at trial and appeal. The counsel failed to protect the right(s) of the defendant.Counsel proceed to trial knowing the state had evidence which could benifit the defendant at trial.

(27)

Prosecution attorney prior to trial disposed that such material evidence was disposed of prior to trial. Defendant alleges that the material evidence, in dispute, is the knife, that several of the State(s) witnesses gave testimony of it's existence.

Defendant: Also alleges that such material evidence is exculpatory in the nature and that illegally disposing of it and the act of suppressing, such as evidence is a denial of the Due Process Clause# of the Fourteenth Amendment, denying the defendant his right to a fair trial.

Defendant argues that because the knife was mentioned in testimony at trial it is material to the guilt of murder as charged, and relevant to the testimony of self-defense.

Defendant also sets forth that the material evidence removes the intent to cause the death, and further, set forth that the denial of the State prosecutor to disclose this material evidence denies the defendant of a fair trial.

Furthermore, it is clearly demostrated on the record that the trial counsel considered the issue of the knife was crucial to the defendant arguement of self-defense, that the trial counsel requested special funds from the court, to hire an independant agency to investigate the matter.

The petitioner has clearly demostrated a violation of his Due Process Rights, ineffective assistance of counsel, violation of the (Brady Rule), exploratory evidence, suppression of evidence by the State's prosecution, the petitioner has been unduly prejudiced by the exculpation of the knife.

The petitioner has maintained self-defense throughout these proceedings and a right to protect his life.

(28)

### AFFIRMATION OF OATH

Before me a Notary Public in and for the State of Alabama, Limestone County, personally appeared Danny L. Stewart #143130, who first being duly sworn depose and say under oath that the facts contained within this motion to dismiss the detainer warrant for contempt of court are true and correct to the best of my knowledge and belief.

Sworn to and subscribed before me on this the 13th day of July, 2005.

_____                    _____
Notary Public                              Danny L. Stewart, AIS#143130

My Commission Expires:  8-16-06

Respectfully Submitted,

_____
Danny L. Stewart, AIS#143130
Limestone Correctional Facility
Dorm 11B-65T
28779 Nick Davis Road
Harvest, Alabama 35749-7009

(29)

CERTIFICATION REGARDING FRONT AND TYPE STYLE

I, Danny L. Stewart, hereby certify that the equipment supplied by the Alabama Department of Corrections to prisoners for the preparation of their legal documents constitutes the closest approximation of Courier New 13 under the circumstances.

As a prisoner, I have access to no other means of preparing my papers for submission to the Court.

Danny L. Stewart, AIS#143130

(30)

## CERTIFICATE OF SERVICE

I, hereby certify that I have on this the 13 day of July, 2005, I placed

the foregoing document in the inmate mail box at Limestone Correctional Facility,

28779 Nick Davis Road, Harvest, Alabama 35749-7009, and also upon the Attroney

General's Office as follows:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, Alabama 36130-0152

Respectfully Submitted,

*Danny Lee Stewart*
Danny L. Stewart